## SUPREME COURT.

THE PEOPLE *ex rel.* FREDERICK W. BARTLETT agt. THE MEDICAL SOCIETY OF THE COUNTY OF ERIE.

Irregularity in the medical profession, by advertising in a newspaper a special practice—as that of a peculiar treatment of throat and lung diseases—by a physician who has never become connected with a medical society of the county where he resides, and who has not been served by the president of such society with the statutory notice; when the irregularity has been abandoned at the time of the application being made for admission, cannot be considered by the society as a ground for permanent exclusion from membership.

Such a practitioner will be allowed a reasonable *locus penitentiæ*, and having suitably repudiated his former course, he will be regarded as entitled to admission.

If he resumes his obnoxious practice after having connected himself with the society, he may be tried for such offence under the regulations provided by law.

*Erie Special Term, March,* 1863.

MOTION for a peremptory mandamus. The relator was admitted to the practice of medicine and surgery by the New York Medical College, and regularly awarded his diploma by the faculty thereof, on the 28th day of February, 1854. He removed to the city of Buffalo during the following spring, and commenced practice; when he caused to be inserted in one or more of the local newspapers a professional notice informing the public that he would practice his profession upon the method introduced and "successfully employed by Dr. Robert Hunter, of New York city, in the treatment of bronchitis, asthma and consumption, in stages of progress heretofore deemed beyond the control of medicine." This method was alleged

to consist " mainly in the direct application of medicine in the condition of vapor, by means of an inhaling instrument, to the bronchial and pulmonary membranes, conjoined with such general treatment as experience had shown to be useful." The publication of this card was continued for about two years, during which time the relator practiced in accordance with the advertisement. After about three years from his removal to Buffalo, he began to enter upon a general practice. In the month of June, 1859, he presented his diploma to a meeting of the medical society, accompanied by an application in writing, asking admission to membership. At the ensuing annual meeting, a committee of five was appointed to investigate the matter, four of whom signed a report recommending his admission. In an interview with the committee, the relator stated that he had abandoned special practice, and expected and intended to conform to the code of medical ethics observed by the society. The members, however, refused to accept the report, and voted to lay it on the table. In January, 1862, the application was renewed and rejected. No notice had been at any time during the publication of the advertisement served on the relator, requiring him to join the society. In February, 1863, the relator obtained from Mr. Justice HOYT an order requiring the society to show cause at the ensuing special term of March, why a mandamus should not issue enjoining the society to perform the act in question.

JAMES A. ALLEN, *for the relator.*

The admission of the relator is matter of strict legal right. (*R. S., part* 1, *chap.* 14, *title* 7, §§ 1, 2 ; *Laws of* 1844, *chap,* 275, § 4 ; *R. S., part* 1, *chap.* 18, *title* 10, *preamble ; Act of April,* 1819, *amending* § 19 *of act of April* 10, 1813 ; *ex parte Paine,* 1 *Hill,* 666 ; *The People ex rel. Gray* agt. *Erie Co. Medical Society,* 24 *Barb.,* 577.)

The relator can be rejected for such cause only as would

be sufficient legal cause for expulsion. (1 *R. S.*, 4*th ed.*, 857, §§ 3, 4, 5, 6, 7 ; *In the matter of Smith*, 10 *Wend.*, 459 ; *ex parte Paine*, 1 *Hill*, 666 ; *Fawcet* agt. *Charles*, 13 *Wend.*, 477 ; 24 *Barb.*, 579 ; *Grant on Corp.*, 264 ; 2 *Kent's Com.*, 297–299.)

The relator has not been " guilty of gross ignorance or misconduct in his profession, or of immoral conduct or habits." (*Med. Soc. Code of Ethics, chap.* 2, *art.* 1, §§ 3, 4, *page* 24 ; *By-laws, art.* 7 *and* 9, § 3.) He had not been admitted, and was not amenable to the by-laws.

No power is given by the statute to the medical society to legislate over the personal conduct of its members. (*Preamble of act of April* 10*th*, 1813 ; *same act*, § 14 ; *Const.*, *art.* 1, § 8.)

To refuse the writ is to expel the relator from his profession. The right of membership in the society is a necessary incident of the right to practice, and they cannot be disjoined.

HENRY W. ROGERS, *for respondents.*

DAVIS, Justice. I am led by my reflections in this cause to the conclusion that the application of the relator was improperly rejected. It is true that he had been guilty of gross acts of empiricism in the publication of the advertisement annexed to his affidavit, and had that publication been continued at the time of his application, I should regard the action of the society as entirely justifiable. But it appears without contradiction, that it had been abandoned for years, and that the practice of the relator had been changed from the specialty mentioned in the advertisement, to one of a general character. There are no allegations made by defendant affecting the moral character of the relator, and I feel constrained to consider his course, at the time of his first establishing himself in Buffalo, in the light of youthful indiscretions, rather than unpardonable offences. The *locus penitentiæ* was not shut

against him, and his abandonment of his empirical con-
duct for so long a time before his application, affords sat-
isfactory evidence of an intent to avail himself of the
right and duty to reform.

While I have no doubt that the members of the society
who voted for his exclusion were animated by a high
sense of duty to their profession, yet they seem to me
to have gone beyond their just powers in refusing him
admission for acts which the relator had himself repu-
diated and abandoned.

If the relator should resume his obnoxious course after
his admission, he will be justly liable to the censure of
the society, and ultimately to removal from its member-
ship.   But with the evidence of his present good con-
duct, and of his adhesion to and intention to conform to
*their* rules and ethics, he was legally entitled to admis-
sion to the society, notwithstanding the professional
errors of his early practice.

The relator is entitled to the writ prayed for.